IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

**CHRISTOPHER LEE RICHARDSON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Bedford County**
**No. 18169PC        F. Lee Russell, Judge**

—————————————————

**No. M2016-00793-CCA-R3-PC**

—————————————————

A Bedford County jury convicted the Petitioner, Christopher Lee Richardson, of attempted theft of property valued at $1,000 or more but less than $10,000, disorderly conduct, possession of a schedule IV controlled substance for sale or delivery, resisting arrest, possession of a Schedule VI controlled substance, and promotion of methamphetamine manufacture. The trial court ordered an effective sentence of twelve years. On appeal, this Court affirmed the convictions and sentence. *See State v. Christopher Lee Richardson*, No. M2013-01178-CCA-R3-CD, 2014 WL 12651041, at *1 (Tenn. Crim. App., at Nashville, June 12, 2014), *no perm. app. filed*. The Petitioner filed a post-conviction petition, and following a hearing the post-conviction court denied relief. On appeal, the Petitioner maintains that he received the ineffective assistance of counsel. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

M. Wesley Hall IV, Unionville, Tennessee, for the appellant, Christopher Lee Richardson.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's conviction for attempted theft of property valued at $1,000 or more but less than $10,000 relates to his attempt to push a shopping cart of unpaid

merchandise out of a Walmart store on January 9, 2012. The remaining convictions stem from events that occurred at a Rite Aid pharmacy during the Petitioner's unsuccessful attempt to purchase pseudoephedrine on February 23, 2012. This Court upheld the Petitioner's convictions and sentence on direct appeal. *See Christopher Lee Richardson*, No. M2013-01178-CCA-R3-CD, 2014 WL 12651041, at *1 (Tenn. Crim. App., at Nashville, June 12, 2014), *no perm. app. filed.*

On direct appeal, this Court summarized the State's evidence against the Petitioner as to the attempted theft charge[1] as follows:

> Doyle Hayes, who was working the third shift as an assistant manager at the Walmart in Shelbyville on January 8, 2012, testified that at some point he "heard the garden center alarm going off on one of [the exterior] exit doors." Mr. Hayes went to the doors but did not see anyone inside the garden center. He did find "a shopping cart full of merchandise" in the garden center. He said that the alarm was emanating from one of the fire doors that opened directly onto the parking lot. The glass sliding doors had been closed, a gate had been lowered over them, and a chain and padlock secured the gate. Mr. Hayes took the cart to the "[l]oss prevention room" without altering the contents. Mr. Hayes said that the [Petitioner] did not have permission to take any items from the Walmart without paying for them.

> During cross-examination, Mr. Hayes acknowledged that he did not take an inventory of the merchandise in the cart and instead "just kind of looked at it to . . . see [the] stuff that was in it." Mr. Hayes said that he left the shopping cart in the locked loss prevention office. He said that his shift ended at 8:00 a.m., that the day shift managers arrived at 7:00 a.m., and that the loss prevention staff arrived at 8:00 a.m.

> Jessica Frandsen testified that she performed "asset protection" for the Shelbyville Walmart. She said that when she arrived at work on January 9, 2012, she observed "[a] buggy full of merchandise" inside the loss prevention office. Ms. Frandsen said that she took the shopping cart to the service desk, where she scanned each item in the shopping cart to determine the dollar amount of the merchandise. She also photographed the cart full of merchandise and then photographed each item individually. She recalled that "[m]ost of the bulkier items were in the bottom of the

---

[1] Some of the testimony at the post-conviction hearing refers to trial testimony as to the attempted theft charge; thus, for clarity, we include the facts related to that charge only.

buggy and then there was a tote that was inside of the buggy. And the tote had merchandise stuffed inside of it and then there was stuff on top of it." Ms. Frandsen testified that the total pre-tax value of the items was $1,505.85.

After determining the value of the items, Ms. Frandsen returned the shopping cart and the merchandise to the loss prevention office and began reviewing the video surveillance from January 8, 2012. Upon reviewing the surveillance, she observed the [Petitioner] and another person enter the Walmart. She also observed the [Petitioner] pushing the same shopping cart that was later discovered abandoned in the garden center area. Another video showed the [Petitioner] attempting to exit the garden center with the shopping cart full of merchandise. When the security alarm sounded, the [Petitioner] left the store.

Ms. Frandsen conceded that the [Petitioner] did not leave the store with the merchandise or push the shopping cart across the threshold of the store. She also conceded that the [Petitioner] did not run from the store.

Gary Dodson testified that he drove the defendant to the Walmart on January 8, 2012, so that the [Petitioner] could "go get a few things for his old lady." Mr. Dodson said that he entered the store with the [Petitioner] and then went to the restroom. He then returned to the car to wait for the [Petitioner]. He recalled that the [Petitioner] was in the store for more than an hour. At one point, Mr. Dodson telephoned the [Petitioner] to inquire about the delay, and the [Petitioner] told him "to move the car to the other end of the parking lot" "[d]own by the garden center." Mr. Dodson refused to move the car, and when the [Petitioner] came out of the store, he was angry with Mr. Dodson. The [Petitioner] told Mr. Dodson that "they were following him around, that he left the buggy sitting there, and it was time to go."

*Christopher Lee Richardson*, No. M2013-01178-CCA-R3-CD, 2014 WL 12651041, at *1-2 (Tenn. Crim. App., at Nashville, June 12, 2014), *no perm. app. filed*.

The Petitioner filed a petition seeking post-conviction relief asserting that his trial counsel ("Counsel") was ineffective. On appeal, he maintains three of his assertions: (1) Counsel failed to excuse a juror the Petitioner requested be excused; (2) Counsel changed the defense strategy without notifying him; and (3) Counsel did not allow him to testify at trial. We summarize only the testimony from the hearing relevant to these issues.

3

At the post-conviction hearing on the petition, Counsel testified that she represented the Petitioner during his trial in this matter. She described the process of preparing for voir dire, saying that she first reviewed the jury list and identified any law enforcement, relatives, extended family of law enforcement that the defense might want to preclude from serving on the jury. Once they had compiled a list, they discussed it with the Petitioner.

Counsel testified that at voir dire, the Petitioner recognized Crystal Adams as a former employer's wife. Once identified, Counsel inquired as to whether the Petitioner wanted Counsel to "strike her." At this point, Counsel had "plenty" of preemptory challenges still available. She recalled that the Petitioner was "insistent" that Ms. Adams be kept on the jury, explaining that Ms. Adams would speak favorably of him. Counsel did not think that Ms. Adams recognized the Petitioner but at some point she did, and the parties briefly spoke about her presence on the jury. Ms. Adams assured the attorneys that she had no "problem" with the Petitioner. Counsel relayed this information to the Petitioner, and he was "adamant" that Ms. Adams should remain on the jury. The Petitioner told her that he never had any issues with Ms. Adams's husband, his employer, and he believed she would speak favorably of him.

Counsel testified that she did not change the trial strategy before trial and fail to discuss the decision with the Petitioner. She agreed that during voir dire, as part of the defense strategy, she raised the issue of the Petitioner's drug addiction. Counsel explained that the Petitioner was found with Xanax on his person so, to the jury pool, she pointed out that being an addict was not a crime. She noted that, ultimately, the Defendant was convicted of misdemeanor simple possession rather than possession for resale. Based upon this, she believed her strategy to be successful.

Counsel testified that she "absolutely" did not "forbid" the Petitioner from testifying, although she acknowledged "strongly encourag[ing]" him not to do so. Upon questioning by the post-conviction court, Counsel confirmed that the trial court conducted a *Momon* hearing, during which the Petitioner testified that it was his decision to not testify.

On cross-examination, Counsel testified that she discussed with the Petitioner that if he chose to testify all of his felony convictions and convictions related to dishonesty would be admissible. Counsel stated that she was certain if the Petitioner had wanted to testify at trial, he would have. Counsel confirmed that Ms. Adams, the juror, made it "abundantly clear" that she could be fair, evaluate the evidence, and made a decision based on the evidence. Furthermore, the Petitioner had made the decision to keep Ms. Adams even before she recognized him.

4

Crystal Adams testified she notified the jury foreperson that she thought she knew the Petitioner. She could not recall whether she had attended school with the Petitioner but confirmed that he had worked for her husband. She stated that she was unaware that the Petitioner owed her husband money. She was further unaware of the Petitioner's criminal history. Ms. Adams stated that she did not attempt to influence the jury members during deliberation based upon her prior experiences with the Petitioner.

The Petitioner testified that Counsel reviewed the jury list with him before trial and that there was nothing noteworthy at the time. During voir dire, however, he recognized one of the potential jurors, Crystal Adams. The Petitioner said that he told Counsel that he did not think it would be a "good idea" for Ms. Adams to sit as a juror, and Counsel told him that, based upon his prior bad behavior in court, the trial judge "wasn't going to go for anything."

The Petitioner testified that a particular defense strategy had been chosen but, once at trial, Counsel employed a different strategy. He explained that the original defense strategy was that he and "the lady" were playing "cat and mouse" at Walmart for an hour. He said that he was walking around with a fully-loaded shopping cart, and she would follow him.

The Petitioner testified that Counsel "absolutely forbid and refuse[d] to let [him] testify." He stated that he wanted to testify at first, but Counsel "kind of really made it look like that they was going to really drag me through the dirt." Further, he believed that he was "going to get no kind of play in this court." Counsel made him "feel like it wasn't the right thing to do." The Petitioner acknowledged that the trial court reviewed with him his right to testify but, based upon his "past episodes in this court," he did not believe the trial court would give him any "leeway." The Petitioner said that he was scared to testify after speaking with Counsel.

On cross-examination, the Petitioner testified that, regardless of Ms. Adams's post-conviction testimony that she had no bad feelings toward the Petitioner and did not disclose any information about the Petitioner to the jury, he believed that she had "an effect" on the jury. About his testifying at trial, the Petitioner agreed that Counsel advised him not to testify but added that she also stated that the trial court would not "like" for him to testify. He explained that this was significant because he knew the trial court would be sentencing him after the trial. He acknowledged that he was told he had the right to testify, but he explained that he did not feel "comfortable" testifying.

After hearing the evidence, the trial court denied the Petitioner relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner maintains that Counsel's representation was ineffective. He asserts that Counsel was ineffective for: (1) failing to exclude a juror, Ms. Adams, at his request; (2) changing the trial strategy without first discussing the change with the Petitioner; and (3) preventing him from testifying. The State responds that the Petitioner has not met his burden of showing that his attorney's performance was deficient, or that any alleged deficiency led to his conviction. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id*. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

## A. Peremptory Challenge of Juror Adams

The Petitioner asserts that Counsel was ineffective for failing to exercise a peremptory challenge against Juror Ms. Adams at the Petitioner's request. In its order denying relief, the post-conviction court made the follow findings as to this issue:

> At the evidentiary hearing on the PC, the Petitioner testified that it was a mistake to allow Ms. Adams to remain on the jury. The Petitioner's first concern was that the juror would have inevitably known about his past misconduct and would have shared that knowledge with the other jurors. The Petitioner's second concern was that because he owed the juror's husband money, the juror would somehow be biased against him.

> [Counsel]'s testimony about the selection of this juror is found to be entirely credible. The [Petitioner] wanted Ms. Adams on the jury. The [Petitioner] never told [Counsel] about the alleged debt and never expressed to [Counsel] any concern about the juror's knowledge of his past. Ms. Adams testified at the evidentiary hearing on the PC, and there is no indication that Ms. Adams was influenced by any knowledge of a debt or any knowledge of the [Petitioner]'s past misconduct. Indeed, it would be a bit unlikely that someone to whom money is owed would want the person sent to the penitentiary for years as incarceration would render repayment of the debt less likely not more likely.

The evidence does not preponderate against the post-conviction court's findings. Counsel testified that she asked the Petitioner about excluding Ms. Adams, and the Petitioner wanted Ms. Adams on the jury because he believed she would speak favorably of him. This is consistent with Ms. Adams's testimony that she was unaware of the Defendant's criminal history and the debt he owed to her husband. Further, Counsel testified that, at the time the Petitioner identified Ms. Adams as his former employer's wife, Counsel still had preemptory challenges available and could have removed Ms. Adams from the panel. When Ms. Adams recognized the Petitioner, she notified the jury foreman and the issue was addressed by the trial court. After speaking with Ms. Adams the trial court determined, with the agreement of the parties, that Ms. Adams could serve as a fair and unbiased juror.

Once Ms. Adams was identified, Counsel asked the Petitioner about recusing her, and the Petitioner stated he did not wish to do so. With both parties in agreement and the trial court determining that Ms. Adams could effectively serve as a juror, the trial moved forward. Accordingly, Counsel was not ineffective for failing to exclude Ms. Adams

under these circumstances. The Petitioner has failed to show by clear and convincing evidence that Counsel was ineffective in this respect; therefore, he is not entitled to relief.

## B. Trial Strategy

The Petitioner next argues that Counsel changed the trial strategy and failed to notify the Petitioner of this change. In his brief, the Petitioner fails to identify the change in strategy, and this issue is also unclear from the testimony at the post-conviction hearing. At the hearing, Counsel denied changing the strategy. She acknowledged mentioning the Petitioner's drug addiction to the jury as an alternative explanation to drug dealing as to why the Petitioner had drugs on his person. The Petitioner referred to the defense strategy of "a woman" playing a "cat-and-mouse" game with him for an hour throughout the Walmartstore. The Petitioner appears to be referring to Jessica Frandsen, the Walmart employee, initially but then states that it was another unidentified female employee.

Counsel denied changing the strategy and the Petitioner has failed to, either through his brief or his testimony at the hearing, identify specifically the change about which he complains. Assuming that his complaint is that Counsel was not going to mention the Petitioner's drug addiction but then did at trial, Counsel's decision to offer the addiction as an explanation for his possession of drugs was an informed decision based on the evidence. And as Counsel pointed out, this strategy may have resulted in a reduced charge of possession rather than possession with intent to deliver or sell. Accordingly, the Petitioner has failed to carry his burden of showing that Counsel was ineffective in this respect or that this strategy prejudiced him; therefore, he is not entitled to relief.

## C. Decision Not to Testify

The Petitioner argues that Counsel was ineffective for "not allowing the [him] to testify." In the order denying relief, the post-conviction court made the following findings:

> The Petitioner's testimony at the evidentiary hearing on the PC varied as to [Counsel]'s role in his failure to testify at trial. At times he appeared to testify that [Counsel] *prevented* him from testifying. At other times his testimony seemed to be that she persuaded the [Petitioner] not to testify. It is undisputed that [Counsel] advised the [Petitioner] not to testify, at least in part because it would subject the [Petitioner] to cross-examination concerning a portion of his lengthy past criminal record. That was profoundly sound legal advice. The length of the [Petitioner]'s record

9

and the likely quality of the [Petitioner]'s explanation of events would likely ruin any chance of an acquittal. [Counsel]'s strategy was sound enough that the jury found the [Petitioner] not guilty of one indicted offense and only guilty of a lesser included offense under that count. Under the facts of this case, [Counsel] was entitled to a laurel wreath and a victory lap for that accomplishment.

The choice as to whether to testify was entirely that of the [Petitioner]. To say the least, [the Petitioner] is a very strong personality who does not seem likely to be browbeaten by his attorney, either at trial or at an evidentiary hearing on a PC.

The evidence does not preponderate against the trial court's findings. Counsel testified that she advised the Petitioner not to testify. This advice was largely due to the Petitioner's extensive criminal history, much of which would have been admissible had he testified. Her advice was sound, informed, and based upon the facts and circumstances of this case.

The Petitioner acknowledged that his right to testify was explained to him during the *Momon* hearing and that he declined to testify. Accordingly, we conclude that the Petitioner has failed to show that Counsel prevented him from testifying. Therefore, he has failed to carry his burden of showing that Counsel was ineffective in this respect. He is not entitled to relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE